UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHAD DOUGLAS DRESSEN,<br>a/k/a Chicken Head,<br><br>Defendant. | 4:17-CR-40047-01-KES<br><br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Chad Douglas Dressen, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 114. Plaintiff, the United States of America, opposes the motion. Docket 125. For the following reasons, the court denies defendant's motion for compassionate release.

### BACKGROUND

Dressen pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dockets 73, 77. On March 1, 2018, this court sentenced Dressen to 210 months in custody followed by 8 years of supervised release. Docket 95 at 2-3; *see also* Dockets 94, 99. The court later reduced Dressen's sentence to 105 months in custody followed by 5 years of supervised release. Docket 106 at 2-3. Dressen is eligible for home confinement on January 28, 2025, and his current anticipated release date is July 28, 2025. Docket 115 at 245.

Dressen is incarcerated at Federal Correctional Institution (FCI) Fort Dix,

a low-security correctional institution in New Jersey. *Id.* at 30, 243; Docket 114 at 1. As of September 22, 2020, there are currently 0 active COVID-19 cases among FCI Fort Dix's inmates and staff, 36 inmates and 6 staff have recovered from COVID-19, and there are 0 deaths from COVID-19. *See BOP: COVID-19 Update*, Fed. Bureau of Prison, https://www.bop.gov/coronavirus/ (last visited on Sept. 22, 2020).

Dressen is 50 years old. Docket 115 at 3. Dressen's health conditions include Diabetes Type II and hypertension. *Id.* at 1. Dressen takes medication to treat and control his diabetes and hypertension. *Id.* at 7.

On April 7, 2020, Dressen submitted an Inmate Request to Staff form, stating his medical conditions and fear of contracting COVID-19. Docket 124-7 at 2-3. On April 14, 2020, Dressen submitted a second Inmate Request to Staff form, citing the First Step Act, the Cares Act, his health conditions, and COVID-19. Docket 124-8 at 2. On April 15, 2020, Dressen sent an email to FCI Fort Dix's administrators, requesting home confinement due to his age, health conditions, and COVID-19. Docket 124-9 at 2. On April 27, 2020, the warden responded to one of Dressen's requests and stated that Dressen needed to provide additional information for his request. Docket 124-10 at 2. On April 30, 2020, Dressen submitted an Informal Resolution form, requesting home confinement. Docket 124-11 at 2. Staff received the request that same day. *Id.* On June 10, 2020, Dressen filed a motion with the court for relief under the First Step Act. Docket 114.

**DISCUSSION**

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release. § 603. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Dressen argues that his age, health conditions, and risk of serious illness or death from exposure to COVID-19 constitutes "extraordinary and compelling" circumstance under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 114 at 1, 3; Docket 124 at 1-2. Dressen requests a sentence of time served with a period of home confinement as a condition of supervised release. Docket 114 at 1.

## I. Administrative Exhaustion

Previously, only the Bureau of Prisons (BOP) Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

On April 7 and 14, 2020, Dressen submitted two Inmate Request to Staff forms, stating his fear of COVID-19 due to his health conditions. On April 15, 2020, he also sent an e-mail to the facility's staff, requesting home confinement. On April 27, 2020, the warden responded to one of Dressen's requests. On April 30, 2020, Dressen also submitted an Informal Resolution form, asking for compassionate release. Regardless of which request this court considers to be the formal request to the warden, the 30-day period expired, at the latest, on June 1, 2020. Given that the 30-day waiting period required by 18 U.S.C. § 3582(c)(1)(A) has lapsed, Dressen's motion is ripe for review on the merits.

## II. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A)(i) provides that the sentencing court may grant compassionate release based on "extraordinary and compelling reasons[.]" Congress did not define what constitutes "extraordinary and compelling." *See*

4

28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* Additionally, there is a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D).

After the FSA was passed, the Sentencing Commission did not update its policy statement because the Sentencing Commission has not had a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. *See United States v. Rodd*, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020). It is clear that Congress wishes to "[i]ncreas[e] the [u]se . . . of

5

[c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission. *See* 132 Stat. at 5239; 18 U.S.C. § 3582(c)(1)(A). But the Commission has not addressed whether the policy statement from the old regime is applicable to the new statute nor has it adopted a new policy statement. Because the First Step Act changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon*, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Beck*, 425 F. Supp. 3d 573, 578-80 (M.D.N.C. 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."); *see also United States v. Frith*, 2020 WL 4229160, at *2 (D.N.D. July 23, 2020).

Assuming that the policy statements continue to apply to compassionate release motions brought under the amended FSA, Dressen has failed to show that his age, health conditions, and incarceration during the COVID-19 pandemic rise to extraordinary and compelling circumstances.

Dressen contends that his circumstances warrant relief under the

6

medical conditions category, U.S.S.G. § 1B1.13 comment note 1(A), and the catch-all provision, U.S.S.G. § 1B1.13 comment note 1(D). Docket 124 at 5-19. Dressen argues that his age and health conditions put him at high-risk of serious complications if he contracts COVID-19. *Id.* at 14-19.

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. People with the following health conditions are at an increased risk of severe illness from COVID-19: cancer, chronic kidney disease, COPD, immunocompromised state from organ transplant, obesity (a BMI of 30 or higher), serious heart conditions, sickle cell disease, and Type II diabetes mellitus. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal (Sept. 11, 2020). The Centers for Disease Control and Prevention (CDC) also provided a list of medical conditions that *might* put a person at an increased risk of severe illness from COVID-19. *Id.* These medical conditions include asthma (moderate to severe), hypertension or high blood pressure, smoking, liver disease, Type 1 diabetes mellitus, and several others. *Id.*

The CDC has also stated that as an individual gets older, the individual's risk for severe illness from COVID-19 increases. *Older Adults*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (Sept. 11, 2020). "The greatest risk for severe illness from COVID-19 is among those aged 85 or older." *Id.*

The court has reviewed the medical records submitted in this case.

7

Dressen's health conditions include Type 2 diabetes and hypertension. The United States appears to concede that having Type 2 diabetes is an "extraordinary and compelling reason" for a sentence reduction. Docket 125 at 6. To the extent the United States suggests that Type 2 diabetes standing alone qualifies as a compelling and extraordinary reason warranting release, the court disagrees. Dressen has not identified how his Type 2 diabetes prevents him from providing self-care in a correctional facility setting or how it amounts to extraordinary and compelling circumstances.

    Medical records show that Dressen is prescribed and takes two daily medications to manage his Type 2 diabetes. Docket 115 at 7. Additionally, Dressen receives diabetes counseling. *Id.* at 3, 9. In 2019, Dressen was taken off one of his diabetes medications to see if his diabetes could be controlled by his diet. *Id.* at 161. When his A1C levels worsened, his medical provider restarted him on the diabetes medication. *Id.* at 161, 163. Overall, the medical records show that Dressen's diabetes is managed and monitored with medication and chronic care visits. *See United States v. Jeffers*, 2020 WL 3100842, at *6-7 (N.D. Iowa June 11, 2020) (finding 59-year old defendant did not demonstrate extraordinary and compelling circumstances when defendant's diabetes and hypertension were controlled, monitored, and managed at his chronic care visits).

    Dressen's hypertension is listed as a medical condition that *might* increase the risk of severe illness from COVID-19. As for Dressen's age, although he has a higher risk for severe illness than individuals younger than

8

him, he is not considered in the greatest risk category according to the CDC because he is not over 85 years old.

While Dressen's medical conditions may put him at a higher risk of severe illness if he contracts COVID-19, that has not been the case as of yet. *See United States v. Fry*, 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (holding that to merit compassionate release, inmate "must show more than a mere speculation of the possibility of contracting the virus."). Additionally, there is no evidence in the record to suggest he has not been able to manage his medical conditions while in the prison environment. Dressen is receiving medical attention and treatment for these conditions, which all appear to be stable, controlled, or monitored. *See, e.g.*, Docket 115 at 3-7, 161, 163 (detailing medical visits and medication for health conditions). "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) (internal quotation omitted). Thus, the court finds that Dressen does not satisfy the criteria under U.S.S.G. § 1B1.13 comment note 1(A) or U.S.S.G. § 1B1.13 comment note 1(D).

Additionally, Dressen's motion has not shown that the BOP's response to the pandemic at FCI Fort Dix has been inadequate in any way. *See United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("[T]he mere possibility of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason

for a sentence reduction under the statutory scheme." (emphasis omitted)). Currently, there are zero active COVID-19 cases among the inmates and staff at FCI Fort Dix. "Thus, it appears that the facility has been responding to and defending against the threats of the virus in a vigorous and generally effective manner." *United States v. Williams*, 2020 WL 4756738, at *4 (E.D. Pa. Aug. 17, 2020); *see also United States v. Berry*, 2020 WL 4035457, at *3 (D.N.J. July 17, 2020) ("[G]iven the markedly restrained progression of the virus within FCI Schuylkill, as compared to within the Delaware Valley region generally, BOP's Action Plan appears to be having a positive impact."). Although Dressen is unable to practice preventative measures as effectively in custody as he would in home confinement, FCI Fort Dix encourages inmates to wash their hands frequently, wear facial masks, and practice social distancing when feasible. *See* Docket 125-1 at 11, 13; *BOP Implementing Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19 _status.jsp (last visited Sept. 22, 2020). Dressen can do all those recommendations to some extent.

The court believes that Dressen's health conditions are appropriately managed at FCI Fort Dix, that the facility is engaged in strenuous efforts to protect inmates against the spread of COVID-19, and that it would act to treat any inmate who does contract COVID-19. Although the court in no way underestimates Dressen's health conditions, such ailments, coupled with the present conditions at FCI Fort Dix, do not establish extraordinary and compelling reasons justifying his early release.

Even if Dressen's medical conditions are "extraordinary and compelling

10

reasons warrant[ing] such a reduction" under 18 U.S.C. § 3582(c)(1)(A)(i), the sentencing factors in § 3553(a) do not weigh in favor of a reduction. Dressen was involved in a conspiracy to distribute methamphetamine; he was found responsible for distributing approximately 142,000 kilograms of methamphetamine. Docket 91 ¶ 18. At one point during the conspiracy, Dressen fled from law enforcement and a high-speed chase ensued. *Id.* ¶ 20. At his sentencing, Dressen's total offense level was a 35, and he was in criminal history category III. *Id.* ¶ 42; Docket 99 at 4. His guideline range was 210 to 262 months. Docket 99 at 5. The court originally sentenced Dressen to the bottom end of his guideline range at 210 months in custody. *Id.* at 10; Docket 95 at 2. Later, the court reduced Dressen's sentence to 105 months in custody. Docket 106 at 2. Dressen's current sentence is already less than the offense's mandatory minimum of 120 months. *See* Docket 91 ¶ 75. Dressen has served approximately 26% of his full term and approximately 31% of his statutory term. Docket 115 at 246. And he appears, to his credit, to have worked on improving himself in custody. *Id.* at 243. But the amended sentence was chosen with care, considering Dressen's and his community's needs and all of the other applicable sentencing factors. Thus, the court finds that Dressen's sentence of 105 months in custody with 5 years of supervised release continues to be appropriate for the seriousness of the crime to which he pleaded guilty.

## CONCLUSION

Dressen has failed to satisfy the extraordinary and compelling reason

standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 114) is denied.

Dated September 22, 2020.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE